### JOHN TYRRELL *vs.* EASTERN RAILROAD COMPANY.

At the crossing of a railroad by a highway, the railroad company placed a gate consisting of a pole about thirty-five feet long, which, when railroad trains were passing, was swung from one side of the highway to a post on the other. As a train was approaching the crossing, a heavy runaway team came along the highway, dashed against the pole which was swung across the highway, and broke it or loosened it from its fastening. The pole swung obliquely across the railroad track and the whole or a part of it was driven into a car of the railroad train which had not slackened its speed. *Held*, in an action against the company by a passenger in the car for injuries received from the pole, that evidence of the above facts would warrant a jury in finding that the accident was caused by the defendants' negligence.

TORT to recover for injuries caused to the plaintiff while a passenger on the defendants' railroad by reason of a gate or pole, maintained by the defendants at the crossing of a highway " for the better protection of their trains from horses, carriages and other obstacles," being thrown towards and entering the car in which the plaintiff was seated, and striking and injuring him. The declaration alleged that the accident was caused by the defendants' negligence. At the trial in the Superior Court, before *Devens*, J., the following facts appeared :

The accident occurred at a place near Prison Point in Charlestown, where the track of the defendants' railroad approaches Boston from the north over a bridge built on piles, and crosses, nearly at right angles, a causeway leading from Charlestown to Cambridge. This causeway has water on both sides of it, and is visible from the railroad for a distance of seven hundred and fifty feet. At the intersection of the railroad and the causeway, to the west of the former and the north of the latter, there stands a small house, one story high, extending about seventeen feet along the causeway and thirty-five feet along the railroad.

At the crossing was a gate, pole, or bar, consisting of a spar about thirty-five feet in length. It hung by a hinge from a high, upright post on the southerly side of the causeway, and extended across the way to a post about four feet high standing on the other side; when trains were not approaching, the pole was swung across the railroad. Both posts stood about nine feet from the nearest rail of the defendants' track. The pole was supported by iron stays or guys extending from the large post, and joining the pole about ten and twenty feet from the further free end, at which end the bar was about three inches in diameter; from thence it increased gradually in diameter. The defendants' railroad crossed the Fitchburg Railroad at a point six hundred feet from the crossing in question.

The plaintiff testified that on the morning of November 17, 1870, as he was travelling in a train on the defendants' railroad from Charlestown to Boston, a pole came in at the forward corner of the car in which the plaintiff was seated, and struck and injured him; and that the pole was broken at one end, and was about twenty-five feet long.

Charles Eaton testified that he was in the same car with the plaintiff at the time of the accident; that after the train crossed the Fitchburg Railroad he saw a runaway team on the highway about the same distance from the crossing of the highway as the train was, and going at about the same rate, as the train had just started from its stop at the crossing of the Fitchburg Railroad; that the team was a very heavy one drawn by very powerful horses; that he thought there would be an accident and started for the door; but that before he got out, the pole entered the forward corner of the car; that the free end of the pole entered first; that the piece which entered was nearly as long as the car; that it brought some of the guys with it; and that the car went from twenty to fifty feet after it was struck before it stopped.

Another witness, Edwin O. Wilkinson, gave testimony similar to that of Eaton.

J. Irving McGee testified that he saw the team coming along the causeway; that the team was very heavy and the horses very powerful; that the near horse made a leap towards the gate, and

struck it about fifteen feet from the short post; that he did not know that the horse's feet went over the gate; that he thought the horse came down so that his breast shoved up against the gate; that the gate swung in and struck the tender of the engine, and ran along the edge of the tender and into the front corner of the car; and that he did not think the horse broke the pole, but that the pole came off the latch when the horse came in contact with it. On cross-examination he testified that he thought the pole must have been broken before it entered the car.

There was also evidence that the pole, when swung across the road, rested in a catch in the short post like a latch in the door; that it caught on this latch of itself when swung towards it; and that when the gate-tender wished to free the pole from the catch, he jerked a piece of iron hanging to one of the guys at the butt end of the pole, and the spring of the pole would throw it out of the catch.

There was evidence that no whistle or danger signal was sounded on the train in which the plaintiff was a passenger, and that brakes were not applied to stop the train.

Upon this evidence, which was all that was material, except on the amount of damages, the case was reported, by consent of parties, for the consideration of this court. If upon the evidence reported the plaintiff was entitled to go to the jury, and a verdict in his favor could be sustained, as matter of law, then the cause to stand for trial; otherwise, judgment to be rendered for the defendants.

*R. D. Smith,* for the plaintiff. Whether or not injury to a passenger is *prima facie* evidence of negligence on the part of the carrier, as held in *Carpue* v. *London & Brighton Railway Co.* 5 Q. B. 747; *Transportation Co.* v. *Downer,* 11 Wall. 129, 134; *Burke* v. *Manchester, Sheffield & Lincolnshire Railway Co.* 22 Law T. (N. S.) 442; *Galena & Chicago Union Railroad Co.* v. *Yarwood,* 17 Ill. 509; the carrier is at any rate bound to guard the passenger from every danger which extreme vigilance can prevent. *Ingalls* v. *Bills,* 9 Met. 1. *Simmons* v. *New Bedford, Vineyard & Nantucket Steamboat Co.* 97 Mass. 361; 100 Mass. 34. *Smith* v. *New York & Harlem Railroad,* 19 N. Y. 127.

*Hegeman* v. *Western Railroad Co.* 16 Barb. 353. *Warren* v. *Fitchburg Railroad Co.* 8 Allen, 227. *Philadelphia & Reading Railroad Co.* v. *Derby*, 14 How. 468. *New Jersey Steam Navigation Co.* v. *Merchants' Bank*, 6 How. 722. *Steamboat New World* v. *King*, 16 How. 469. *Knight* v. *Portland, Saco & Portsmouth Railroad Co.* 56 Maine, 234. *Edwards* v. *Lord*, 49 Maine, 279. *Willoughby* v. *Horridge*, 12 C. B. 742. *Bowen* v. *New York Central Railroad Co.* 18 N. Y. 408. *Tuller* v. *Talbot*, 23 Ill. 357. *McElroy* v. *Nashua & Lowell Railroad Co.* 4 Cush. 400. *Tobin* v. *Portland, Saco & Portsmouth Railroad Co.* 59 Maine, 183.

2. It is no defence to an action by a passenger against a carrier, to recover for an injury sustained through his negligence, that the negligence or trespass of a third party contributed to the injury, although such third party acted entirely independently of the carrier. *McElroy* v. *Nashua & Lowell Railroad Co.* 4 Cush. 400. *Eaton* v. *Boston & Lowell Railroad Co.* 11 Allen, 500. The carrier is bound to keep his track clear of cattle, if he has to fence it from end to end. *Sullivan* v. *Philadelphia & Reading Railroad Co.* 30 Penn. State, 234. *Virginia Central Railroad Co.* v. *Sanger*, 15 Grat. 230. The whole circumstances of the case are to be left to the jury, to determine the question of negligence. *Le Barron* v. *East Boston Ferry Co.* 11 Allen, 312. *Camden & Amboy Railroad & Transportation Co.* v. *Burke*, 13 Wend. 611.

Among the cases bearing upon accidents, more or less like the one described in the evidence reported, are *White* v. *Winnisimmet Co.* 7 Cush. 155; *Titcomb* v. *Fitchburg Railroad Co.* 12 Allen, 254; *Willoughby* v. *Horridge*, 12 C. B. 742; *Stapley* v. *London, Brighton & South Coast Railway Co.* L. R. 1 Ex. 21; *Wanless* v. *Northeastern Railway Co.* L. R. 6 Q. B. 481; *Lunt* v. *London & Northwestern Railway Co.* L. R. 1 Q. B. 277; *Kearney* v. *London, Brighton & South Coast Railway Co.* L. R. 5 Q. B. 411; L. R. 5 Q. B. 759; *Welfare* v. *London & Brighton Railway Co.* L. R. 4 Q. B. 693; *Daniel* v. *Metropolitan Railway Co.* L. R. 3 C. P. 216, 591; L. R. 5 H. L. 45; *Page* v. *Great Eastern Railway Co.* 24 Law T. (N. S.) 585; *Bilbee* v. *London, Brighton & South Coast Railway Co.* 18 C. B. (N. S.) 584; *Nashville & Chattanooga*

*Railroad Co.* v. *Messino*, 1 Sneed, 220 ; *Wilkie* v. *Bolster*, 3 E. D. Smith, 327.

*S. B. Ives, Jr.*, for the defendants. A carrier of passengers is liable only for actual negligence, which the plaintiff must affirmatively prove, and is not responsible for mere accident or misfortune. *Le Barron* v. *East Boston Ferry Co.* 11 Allen, 312. *Curtis* v. *Rochester & Syracuse Railroad Co.* 18 N. Y. 534. *Holbrook* v. *Utica & Schenectady Railroad Co.* 2 Kern. 236. *Sawyer* v. *Hannibal & St. Joseph Railroad Co.* 37 Mo. 240, 259. *Stokes* v. *Eastern Counties Railway Co.* 2 F. & F. 691. *Hammack* v. *White*, 11 C. B. (N. S.) 587, 594. *Bird* v. *Great Northern Railway Co.* 28 Law J. Ex. 3. *Reedie* v. *London & Northwestern Railway Co.* 4 Exch. 244. *Hutchinson* v. *York, Newcastle & Berwick Railway Co.* 5 Exch. 343. *Scott* v. *London & St. Katherine's Dock Co.* 3 H. & C. 596. *Withers* v. *North Kent Railway Co.* 3 H. & N. 969. *Daniel* v. *Metropolitan Railway Co.* L. R. 3 C. P. 216. The defendants furnished the ordinary kind of gate, such as was sufficient for all the purposes for which it was erected, and which it might reasonably be expected to subserve. The object was to prevent travellers upon the highway from an unsafe or incautious approach to the track at a time when it would be dangerous so to approach, and not to protect the trains from attacks from the highway. The defendants were not bound to provide against any possible contingency, or for all imaginary cases, but for real danger, according to the usual experience of mankind. Their duty was performed if they erected a barrier sufficient for such circumstances as might naturally be expected to arise, and consistent with the double use of the *locus* as a railroad and a highway. The gate must be sufficient to prevent travel on the highway when such travel would be dangerous, and at the same time so easily moved as to prevent no obstruction to the reasonable use of the highway when such use would be free from danger to the public.

The defendants were not guilty of negligence in not causing a danger signal to be sounded, or the speed of the train to be slackened. As matter of law, there was no negligence or want of proper precaution. If the danger of a collision was a danger

Tyrrell *v.* Eastern Railroad Company.

which the engineer might naturally have apprehended, under the circumstances, he would have been guilty of negligence if he had stopped his train. In such a case there was more danger in stopping than in going on.

By THE COURT. If a gate or cross-bar maintained by a railroad at a crossing is so constructed or arranged that, in any event which may reasonably be expected to occur, it is dangerous to passengers, the railroad corporation is liable for an injury to a passenger caused by such defective construction or arrangement. In this case we cannot say, as matter of law, whether the bar at the crossing where the accident happened was so constructed and arranged as to be reasonably safe, or whether it was insufficient and dangerous to passengers. This is a question of fact. A majority of the court is therefore of opinion that the case should have been submitted to the jury. *Case to stand for trial.*