HONORA MARKS *vs.* FITCHBURG RAILROAD COMPANY.

Suffolk.   November 16, 1891. — February 24, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON,
& BARKER, JJ.

*Personal Injuries — Railroad — Gates at Grade Crossing — Due Care —
Negligence.*

In an action for personal injuries occasioned to the plaintiff's intestate by a collision with a train at a crossing at grade of a highway by the defendant's railroad, there was evidence that another railroad crossed the same way at grade at between sixteen and seventeen feet from the defendant's crossing; that the intestate at the time was coming over the other crossing towards the defendant's crossing, riding upon a cart drawn by two horses; that one approaching from that direction could not see a train coming on the defendant's track until very near it, by reason of buildings obstructing the view; that the driver of the cart had no warning of the train, which was approaching rapidly, until he was on the other crossing and saw the gate being lowered at the defendant's crossing; that the gates on the other crossing were also lowered behind the cart, and the driver was ordered by the gateman there not to back his team; that the horses, whose heads were very close to the defendant's gates, were frightened at the approaching train, and breaking through the gate collided with the train; and that the gate was made of narrow strips of board, and was not of sufficient strength to be of service in stopping horses if they pushed against them. *Held,* that the questions of negligence on the part of the defendant and of due care on the part of the plaintiff were for the jury.

TORT, for personal injuries occasioned to David L. Marks, the plaintiff's intestate, by a collision at a crossing at grade of a highway by the defendant's railroad, in that part of Boston called Charlestown. Trial in the Superior Court, before *Dunbar,* J., who allowed a bill of exceptions, in substance as follows.

The evidence tended to prove the following facts. The defendant's railroad at the crossing in question runs from east to west, and is crossed by Austin Street nearly at a right angle. Austin Street, at a short distance to the south, declared by one witness to be not more than sixteen or seventeen feet, also crossed at grade the tracks of the Boston and Maine Railroad. Each of these crossings was protected by gates. These gates were of the kind in common use, being in two sections, both operated

by a mechanism which raised and depressed both sections simultaneously. Each section consisted of two narrow strips of board pivoted to a post at the curbstone, and reaching to the centre of the street, and was counterbalanced at either outside end. The end of each section, which reached to the centre of the street when placed in a horizontal position, was supported vertically by iron rods attached to the end of the section, which dropped to the ground when the section was lowered. The crossing was planked in the usual manner between the rails to the width of the street. Austin Street at the crossing was about thirty feet wide, from curb to curb.

On or about May 23, 1888, the plaintiff's intestate was employed as a helper to the driver of an ice cart. About seven o'clock in the morning the cart, loaded with ice and drawn by two horses, was approaching these crossings from the south on its way to Charlestown, the intestate sitting with the driver. When the team was on the Boston and Maine crossing, the gates began to go down on the Fitchburg crossing, and the driver stopped the horses, which were going at a walk a few feet from the Fitchburg crossing, and with the cart just clear of the Boston and Maine crossing. The gates at the Boston and Maine crossing were then lowered, and the driver was then told by the gateman at that crossing not to back the team. The view of the tracks of the Fitchburg Railroad to the west from the crossing was cut off from one approaching it from the south by a round-house and water tank, until the Boston and Maine crossing was reached. The lowering of the gates at the Fitchburg crossing was the first warning the driver had that a train was approaching. As the horses stood quietly with the cart between the crossings, the train rapidly approached on the Fitchburg Railroad from the west. The horses were frightened at the noise of this train, and plunged on to the gates, and, breaking them down, ran upon the tracks in front of the engine. The cart was struck, and the intestate was thrown from the driver's seat, and seriously injured, dying shortly afterwards.

Upon this evidence, the judge ruled that the plaintiff could not maintain the action, and ordered a verdict for the defendant; and the plaintiff alleged exceptions.

The case was argued at the bar in November, 1891, and afterwards was submitted on the briefs to all the judges except *Lathrop*, J.

*H. W. Bragg & R. Bradford*, for the plaintiff.

*G. A. Torrey*, for the defendant.

KNOWLTON, J.    The defendant's railroad crosses Austin Street in Charlestown at grade, and very near it — one witness said at a distance from its tracks of not more than sixteen or seventeen feet — the tracks of the Boston and Maine Railroad cross the same street.    The plaintiff's intestate was struck by a locomotive engine at the crossing, and died soon after from the injury so received.    The jury might well have found from the evidence that he and the driver with whom he was riding were both in the exercise of due care.

There was evidence that one approaching the crossing as the plaintiff's intestate was cannot see a train coming on the defendant's railroad until he gets very near the tracks, because a roundhouse and tank cut off the view.    The testimony was that the driver of the ice cart had no warning of the approaching train until he was on the tracks of the Boston and Maine Railroad, and within a few feet of the defendant's tracks.    He was ordered by the gateman of the Boston and Maine Railroad not to back his team, probably because of danger from the approach of a train on that road.    The gates of the defendant's road were shut down before him, and the defendant's train was approaching so that he could not go on, and the tracks of the Boston and Maine Railroad were behind him with the gates closed, so that he could not go back, and he was obliged to stay there, shut in on both sides, with his horses' heads only a few feet from a track on which a train was rapidly approaching.    It is a matter of common knowledge that many horses which are reasonably safe and proper to be used will not stand quietly and let a train approach so near them as did the train to these two horses attached to the ice cart.    Unless his horses were unusually fearless, a driver situated as this driver was would have good reason to expect an accident.    There was evidence that the train was running at the rate of twenty miles an hour.    If the driver had been warned of the coming train before he reached the tracks of the Boston and Maine Railroad, or if the warning had been given long

enough before the arrival of the train to enable him to cross over if he was near the railroad, the accident might not have happened.

The gates were made of narrow strips of board, and were not of sufficient strength to be of service in stopping horses if they pushed against them. Ordinarily, the principal purpose of gates is effectually to warn travellers not to cross, but there may be places in which the gate should be a strong barrier that will help to keep horses off the tracks. If, in the proper management of the defendant's business at this crossing, persons driving in the exercise of due care are likely to find themselves shut in between the defendant's tracks and the tracks of the Boston and Maine Railroad when trains are passing, it is a question for the jury whether the defendant should not, for the protection of travellers, have a different kind of gate to keep frightened horses from pushing upon the tracks. The rate of speed at which trains should be permitted to approach the crossing, the length of time before the passage of a train that warning should be given to travellers on the street in view of the close proximity of tracks of other railroads, the kind of warning that should be given, and the kind of gates or barriers that should be used, all enter into the determination of the question how the defendant's business at this place should be managed to prevent accidents of this kind when travellers are in the exercise of proper care.

We are of opinion that it was a question of fact for the jury, whether, in some of these particulars, the defendant did not fail to exercise such care as ought to have been exercised for the protection of persons using the highway at this very dangerous place. *Titcomb* v. *Fitchburg Railroad*, 12 Allen, 254. *Tyrrell* v. *Eastern Railroad*, 111 Mass. 546.

*Exceptions sustained.*